UNITED STATES

v.

Private (E–2) Preston P. AUSTIN, 007–54–
1849, U. S. Army, Company A, 1st Bat-
talion, 15th Infantry, 3d Infantry Divi-
sion, APO New York 09031.

SPCM 9868.

U. S. Army Court of Military Review.

9 June 1975.

Appellate counsel for the Accused: CPT Pete M. Dalmut, JAGC; CPT Anthony J. Siano, JAGC; COL Victor A. De Fiori, JAGC.

Appellate counsel for the United States: CPT Jonathan D. Glidden, JAGC; MAJ Steven M. Werner, JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

O'DONNELL, Judge:

The appellant was convicted, contrary to his pleas, of willfully disobeying a command of his superior commissioned officer, wrongful use of a methaqualone drug in violation of a lawful general regulation, and three specifications of assaulting another, in violation of Articles 90, 92, and 128 of the Uniform Code of Military Justice, 10 U.S.C. §§ 890, 892 and 928. The military judge sentenced him to be discharged with a bad-conduct discharge, to be confined at hard labor for four months, to forfeit $200.00 pay per month for four months and to be reduced to the lowest enlisted grade. The convening authority approved the sentence.

On the evening of 10 November 1973, Private First Class Ray A. Wilbur, Specialist Four Robert Hall and Specialist Four Gary C. Hixson were drinking beer in a German gasthaus close to their barracks. Sometime during the evening, a soldier by the name of Jewett entered the gasthaus accompanied by the appellant, Private Preston P. Austin, and several others. For some reason, Wilbur and Jewett engaged in a scuffle which began in the gasthaus and continued outside. The appellant did not take part in the scuffle. Following the fight, Jewett and the appellant left the area with their companions. Wilbur and Hixson returned to the gasthaus, where they remained for approximately 15 minutes. As Wilbur and Hixson were returning to their barracks, they were set upon by several persons and assaulted— Hixson by a kick to the body and Wilbur by a kick to the head.

At trial, Wilbur testified that he could not identify the appellant as being at the scene of the assault. Specifically, he testified that on his way back to the barracks he saw four persons on a bridge. He did not recognize any of them at that time. The four persons followed Wilbur, yelling "we're gonna get you, come back here." After he was overtaken by the group, Wilbur recognized Jewett, but nobody else. Wilbur was then struck and kicked by somebody in this group, by whom he does not know. At no time did he recognize anyone other than Jewett.

Hixson also testified at the trial. He stated generally that he was chased by three or four people, including the appellant and that the appellant shouted at him several times in a threatening manner. Hixson, however, could not tell who assaulted either him or Wilbur. Hixson's credibility was placed in issue by a previous statement he allegedly made to a "lawyer's assistant" in the office of the staff judge advocate to the effect that he could not positively state that the appellant was present during the assaults.

Specialist Hall also testified for the Government. While he could state that he, Hixson and Wilbur were pursued by four persons, he could not identify Austin as being one of them.

The appellant was convicted of assaulting Wilbur and Hixson, as an aider and abettor, based essentially on the testimony of the two victims and that of Specialist Hall. In his post-trial review of the case, the staff judge advocate accurately summarized the testimony of Hixson and Hall. He summarized the testimony of Wilbur, however, in the following language:

"PFC Wilbur testified that he was at Beno's on the evening of 10 November when Jewett came in with Austin and others and started a fight. After the fight, Jewett and Austin left; Wilbur and Hixson and Hall cleaned up and then started to return to the billets. When they saw Jewett and Austin and the others on a bridge, they started running across the field, but Jewett and Austin chased them with belts and sticks, yelling

'We're going to get you'. Wilbur fell and Jewett kicked him in the head and hit him with a belt buckle."

██ This summary of Wilbur's testimony was clearly erroneous and misleading. The staff judge advocate in his post-trial review must "fairly summarize the evidence on both sides of an issue and provide the convening authority with adequate guidelines by which to determine anew the guilt or innocence of the accused." *United States v. Smith*, 23 U.S.C.M.A. 98, 99, 48 C.M.R. 659, 660 (1974). In discussing these evidentiary matters, the staff judge advocate may not mislead the convening authority as to the facts or the law. *United States v. Scaife*, 23 U.S.M.C.A. 234, 49 C.M.R. 287 (1974); *United States v. Samuels*, 22 U.S.C.M.A. 238, 46 C.M.R. 238 (1973). In view of the negative testimony of Hall and the questionable testimony of Hixson, the inaccurate summarization of Wilbur's testimony was prejudicial to the substantial rights of the appellant.

The Government, however, contends that the usual remedy of a new review and action is not required in this case in view of the recent decision of the Court of Military Appeals in *United States v. Goode*, 23 U.S. C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975). In that case, the Court directed that on and after 15 May 1975 a copy of the post-trial review will be served on defense counsel "with an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment." 23 U.S.C.M.A. at 370, 50 C.M.R. at 4, 1 M.J. at 6. The Court added that the failure of counsel to comment on the review within five days of service would "normally be deemed a waiver of any error in the review." *Id.* The Government position is that the defense waived any objection to the misleading and inaccurate review by failing to object thereto after having been served a copy of the review.

██ The *Goode* rule, by its terms, does not apply to reviews prepared before 15 May 1975. Notwithstanding, we believe the spirit of *Goode* should be applicable in any case where the defense has been served a copy of the review. However, the *Goode* decision must be read in context. The Court in *Goode* was concerned with adverse matter from outside the record which the accused had no opportunity to rebut.

██ The staff judge advocate in preparing his post-trial review may include matter from outside the record to the extent it bears on the sentence to be approved or disapproved by the convening authority. However, as the Manual for Courts-Martial provides at paragraph 85*b*,

"If an adverse matter from outside the record is included, the accused must be afforded an opportunity to rebut or explain the matter, unless he supplied the information himself or may be charged with knowledge that the information might be used against him, as when it appears in a record of nonjudicial punishment."

The Court of Military Appeals over the years has been concerned with the problem of adverse matter in the post-trial review. *See, e. g., United States v. Owens*, 11 U.S.C. M.A. 240, 29 C.M.R. 56 (1960); *United States v. Griffin*, 8 U.S.C.M.A. 206, 24 C.M.R. 16 (1957); *United States v. Lanford*, 6 U.S.C.M.A. 371, 20 C.M.R. 87 (1955). Because of the prevalence of the problem, the Court, over 17 years ago, "suggested" that the practice be adopted of serving a copy of the review on the accused or his counsel prior to action by the convening authority. *United States v. Vara*, 8 U.S.C.M.A. 651, 25 C.M.R. 155 (1958). The suggestion in *Vara* became a mandate in *Goode*, at least to the extent that service on counsel is sufficient.

██ Viewing the *Goode* decision in this perspective, we can only conclude that the Court intended to limit the thrust of its decision to adverse matters from outside the record. The procedure directed by *Goode* is for the benefit of the accused and provides him the opportunity to explain or rebut adverse matter in the review about which he has personal knowledge. It should not be used to excuse the failure of the staff judge advocate to comply with his

legal responsibility of accurately summarizing the evidence and providing the convening authority with adequate guideposts to determine the guilt or innocence of the accused. *United States v. Smith, supra.* The appellant, under the circumstances of this case, did not waive his right to a fair and accurate post-trial review. A new review and action is required.

The action of the convening authority, dated 20 February 1974, is set aside. The record of trial is returned to The Judge Advocate General for a new review and action by the same or a different staff judge advocate and convening authority.

Senior Judge JONES and Judge VINET concur.