**UNITED STATES**

v.

**Private (E–2) Victor J. MYHRBERG, 100–50–9202, U. S. Army, Combat Support Company, 2d Battalion, 21st Infantry, Fort Stewart, Georgia.**

**SPCM 11830.**

U. S. Army Court of Military Review.

Sentence Adjudged 2 Dec. 1975.

Decided 16 July 1976.

---

Appellate Counsel for the Accused: CPT Sammy S. Knight, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Laurence M. Huffman, JAGC; CPT Gary F. Thorne, JAGC; MAJ John T. Sherwood, Jr, JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

COOK, Judge:

Appellant was convicted, in conformity with his plea, of a violation of Article 121, Uniform Code of Military Justice, (10 U.S.C. § 921) for stealing a winch valued at $300.00. The trial judge sitting alone as a special court-martial sentenced appellant to a bad-conduct discharge, confinement at hard labor for four months, forfeiture of $240.00 per month for four months, and reduction to the lowest enlisted grade.

In his post-trial review [1] the staff judge advocate stated that the "maximum sentenced based on correct findings" was a dishonorable discharge, confinement at hard labor for five years, total forfeitures and reduction to the lowest enlisted grade.

Had appellant been tried by a general court-martial, the staff judge advocate's advice in this particular would have been impeccably correct.[2] However, as appellant was tried by a special court-martial authorized to impose a bad-conduct discharge, the staff judge advocate's advice was grossly inaccurate in several particulars, i. e., as to the type of discharge, the length of confinement and the amount of forfeitures.[3]

As this Court has noted on several prior occasions, a misadvice of this type is preju-

---

1. Prepared in compliance with paragraph 85b, MCM 1969 (Rev.) and Article 65(b), UCMJ.

2. See paragraph 126, MCM 1969 (Rev.).

3. Article 19, UCMJ and paragraph 15b, MCM 1969 (Rev.), established the sentence perimeters as a bad-conduct discharge, confinement at hard labor for six months, forfeiture of two-thirds pay per month for six months, and reduction to the lowest enlisted grade.

dicially erroneous.[4] This is true even in the case of a bad-conduct discharge special court-martial.[5]

Either reassessment of the sentence or a new review and action was invoked to rectify the error.[6] In all probability we would resort to a similar curative action in this instance were it not for the United States Court of Military Appeals opinion in *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975).

The post-trial review in the instant case, dated 6 January 1976, was served upon the trial defense counsel on 7 January 1976. He signed a statement on that same date certifying that he had read the post-trial review and did ". . . not desire to submit anything in addition, explanation or rebuttal." Thereafter, on 8 January 1976, the convening authority took his action in this case.

In *United States v. Goode, supra*, the Court established a rule in the following terms:

> "Accordingly, it is ordered that on and after May 15, 1975, a copy of the written review required by Article 61 or 65(b), UCMJ, 10 U.S.C. § 861 or 865(b), be served on counsel for the accused with an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment. Proof of such service, together with any such correction, challenge or comment which counsel may make, shall be made a part of the record of proceedings. The failure of counsel for the accused to take advantage of this opportunity within 5 days of said service upon him will normally be deemed a waiver of any error in the review." 23 U.S.C.M.A. at page 370, 50 C.M.R. at page 4, 1 M.J. at page 6.

Although it would appear from an unfettered reading of this rule that the trial defense counsel waived further consideration of this review error by his failure to comment on it, appellate defense counsel urges another result. That counsel would have us hold that the waiver aspects of the *Goode* rule are for exceedingly circumscribed application. This Court addressed this same contention in *United States v. Turner*, 2 M.J. 778 (A.C.M.R. 12 March 1976). A lengthy quote from that opinion will provide our answer to appellate counsel's assertion.

> ". . . [I]t is his position that this error was not waived through the *Goode* process. He relies principally on the opinion in *United States v. Austin*, 51 C.M.R. 16, 2 M.J. 391 (A.C.M.R.1975), which held that the waiver aspects of the rule enunciated in *Goode* are for application only as to matters contained in the review which were derived from a source *aliunde* the record and which are unrebutted or unexplained by the trial defense counsel after service on him of the review. Failure of the trial defense counsel to comment on any other types of erroneous material contained in the post-trial review, no matter how egregious they may be in character, does not, according to the *Austin* decision, constitute a waiver thereof. We disagree. While conceding that the factual context of the *Goode* case involved adverse matters from outside the record, which were presented to the convening authority at the time of his action without having first afforded the appellant the opportunity of rebuttal, we do not feel that such facts circumscribe the scope of the rule.
>
> As noted above, there is no such delimiting language in the terms of the rule itself. It seems implicit from a reading of the explanation for the rule[7] that the

---

4. *United States v. Knoche*, 46 C.M.R. 458 (A.C.M.R.1972); *United States v. Maroste*, 40 C.M.R. 606 (A.B.R.1969).

5. *United States v. Bruce*, 46 C.M.R. 968 (A.C.M.R.1972), which cites several unpublished decisions of like purport involving bad-conduct special courts-martial; *United States v. Phenis*, 43 C.M.R. 558 (A.C.M.R.1970).

6. *Id.*

7. "This case and others coming before the Court make it apparent that the post-trial review of the staff judge advocate has occasioned

rule was designed to markedly reduce the number of cases entertained on appeal that are bottomed on allegations of mistakes in post-trial reviews. The interpretation placed on the *Goode* rule by *United States v. Austin, supra,* would not accomplish this objective since it would apply waiver to only a limited category of cases. Just how limited becomes obvious from a consideration of the vast assortment and variety of errors that can be alleged to have occurred in a post-trial review. A recent article in The Army Lawyer enumerates 36 separate potential pitfalls in connection with the preparation of a post-trial review.[8] To restrict the impact of the *Goode* waiver rule to only one or two of this multitude of possible errors would not appreciably ameliorate the 'recurrent complaints' 'the continual and often repeated claims of error, plus the delay in determining their validity and correction,' as the *Goode* rule was designed to do. As we view the *Goode* rule, the United States Court of Military Appeals is using it not only to reduce the number of these types of cases to be considered on review, but the Court is also employing the rule as a prod to animate and impel trial defense counsel to a more active participation in the post-trial review procedure. The Court has repeatedly emphasized that, '(i)t is at the convening authority level that the accused has his best opportunity to receive clemency.'[9] The Court appropriately recognizes that the trial defense counsel shares with the staff judge advocate the duty to insure that the convening authority receives the most accurate information possible to aid him in the exercise of his broad prerogatives relative to findings and, more particularly, the sentence.

We do not feel it will serve this salutary purpose if the waiver aspect of the rule is circumscribed as indicated in *United States v. Austin, supra.*[10] "

 We also note that the trial counsel in his closing argument on sentence stated that, ". . . some confinement should be adjudged so that it does have a deterrent effect, not only for the accused and his further conduct, but for the other individuals in the First Brigade and particularly those individuals who are given that responsibility to guard things, not only in the motor pool,[11] but in other guarded areas on this installation." This form of argument

---

8. La Haye, *Check List of Post-Trial Review Errors,* The Army Lawyer (Feb. 1976).

9. *United States v. Goode, supra,* 23 U.S.C.M.A. at p. 369, 50 C.M.R. at p. 3, 1 M.J. at p. 5; *United States v. Boatner,* 20 U.S.C.M.A. 376, 43 C.M.R. 216 (1971); *United States v. Wilson,* 9 U.S.C.M.A. 223, 26 C.M.R. 3 (1958); *United States v. Wise,* 6 U.S.C.M.A. 472, 20 C.M.R. 188 (1955). *See also United States v. Beatty,* 10 U.S.C.M.A. 311, 27 C.M.R. 385 (1959), wherein the author of the *Goode* rule expressed the opinion that service of a copy of the posttrial review on the trial defense counsel is mandated to give full effect to Article 38(c), UCMJ, and to aid counsel to properly perform his duties under paragraph 48*j*(3), MCM, U.S.,

recurrent complaints about what should be included in it. Similar outcries have been voiced because of the misleading nature of certain reviews. Because of these continual and often repeated claims of error, plus the delay in determining their validity and correction, we deem it appropriate and expedient to take corrective action." *United States v. Goode, supra,* 23 U.S.C.M.A. at page 370, 50 C.M.R. at page 4, 1 M.J. at page 6.

1951 (now paragraph 48*k*(3), MCM 1969 (Rev.)).

10. It should be noted that the application of this waiver provision would, of course, be subject to the same limitations, *e. g.,* manifest miscarriage of justice, as any other waiver rule. Recent views of the Courts of Review of our sister services as to the scope and applicability of the *Goode* rule are expressed in *United States v. Gilkey,* No. 75 3213 (N.C.M.R. 19 March 1976); *United States v. Salinas,* No. 76 0198 (N.C.M.R. 29 March 1976); *United States v. Chipman,* No. 76 0266 (N.C.M.R. 23 March 1976); *United States v. Hill,* No. 23203, 2 M.J. 289 (C.G.C.M.R. 5 May 1976); *United States v. Smith,* No. 75 1927 (N.C.M.R. 26 March 1976); *United States v. McGill,* No. 75 1769 (N.C.M.R. 15 April 1976); *United States v. Cummins,* 1 M.J. 851 (A.F.C.M.R. 28 April 1976). The opinion in *United States v. Austin,* 51 C.M.R. 16, 2 M.J. 391 (A.C.M.R. 1975) is no longer for application.

11. The appellant perpetrated his theft while assigned as a guard in his unit's motor pool.

was condemned by the United States Court of Military Appeals in *United States v. Mosely*, 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976). In this case, however, the subject of deterrence as a consideration in sentencing was first injected into the discussion by the trial defense counsel during his argument. We could, therefore, determine that there was no error since the defense invited this form of rebuttal.[12] Nevertheless, we will consider the trial counsel's argument erroneous and test for prejudice. Weighing the seriousness of the offense and the maximum sentence available against the sentence imposed, it is our opinion that the reference to deterrence in trial counsel's argument had a negligible impact on the adjudged sentence.

The findings of guilty and the sentence are affirmed.

Senior Judges BAILEY and CLAUSE, Judges COSTELLO, DeFORD and DONAHUE concur.

Judge O'DONNELL not participating.

JONES, Senior Judge, concurring:

I concur in the opinion of Judge Cook. As this is a reversal of the position I took in *United States v. Austin*, 51 C.M.R. 16, 2 M.J. 391 (A.C.M.R.1975), I believe an explanation is in order.

For some time I have felt that our opinion in *Austin* was too restrictive. We interpreted the new rule announced by Judge Ferguson in *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975), in a manner consistent with the facts of *Goode* and consistent with the prior Court of Military Appeals decisions on the subject. We failed in *Austin* to give credence to the sweeping nature of the new rule pronounced in *Goode*. In short, we were reluctant to believe the Court meant what it said.

I have tried to formulate an interpretation of *Goode* somewhere between the extremes of *Austin* and *Turner*[1] but I have been unable to do so. Any such rule would

be difficult to apply and would not give full effect to the plain meaning of the language in *Goode*. Thus I am unable to align myself with Judge Mounts' dissent.

I believe the interpretation adopted by this Court in *Turner* more clearly comports with the language of *Goode* and will have the intended effect of reducing litigation over SJA review errors. At the same time the rights of the accused will be protected by refusing to apply waiver when it "would result in a manifest miscarriage of justice or would otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Pinkney*, 47 C.M.R. 305 (A.C.M.R.1973), *affirmed* 22 U.S.C.M.A. 595, 48 C.M.R. 219 (1974).

CLAUSEN, Chief Judge, concurring in the result:

The *Goode* case: (1) establishes a procedure for service of the post-trial review on counsel for the accused; (2) explains that the purpose of this procedure is to provide the accused with an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wished to comment; (3) requires that proof of service of the review on trial defense counsel plus any correction, challenge or comment trial defense counsel may make be made a part of the record of the proceedings; and, (4) provides that failure of trial defense counsel to take advantage of the opportunity to respond within five days of service will normally be deemed a waiver of any error in the review. Necessarily, if trial defense counsel responds, but fails to mention a matter later raised for the first time at an appellate level, waiver normally should be applied with respect to the matter not raised. Use of the word "normally" clearly signals that the waiver rule is not to be applied blindly; in short, in an abnormal situation the waiver rule should not be applied. In my view, the Court in *Goode* said only that the waiver rule should be applied unless doing so

---

12. *But see United States v. Miller*, 24 U.S.C.M.A. 181, 51 C.M.R. 400, 1 M.J. 357 (1976).

1. *United States v. Turner*, 2 M.J. 778 (A.C.M.R. 12 March 1976).

would result in a manifest miscarriage of justice.

I will assume that the majority's assessment that the staff judge advocate's post-trial review concerning the maximum sentence was prejudicially erroneous.* Even so, applying the waiver rule will not result in a manifest miscarriage of justice in this instance and I, therefore, concur in the result.

I will comment on two other matters.

The majority quotes with approval language in *Turner* to the effect that "the trial defense counsel shares with the staff judge advocate the duty to insure that the convening authority receives the most accurate information possible to aid him in the exercise of his broad prerogatives relative to findings and, more particularly, the sentence." While this may be true in a sense, I disagree with the implication that the trial defense counsel owes a duty to the convening authority in this regard. The duty to the convening authority in this area, stemming from statute, must be borne solely by the staff judge advocate. The trial defense counsel's duty is to his client. This difference in masters may become significant when assessing the failure to perform. The staff judge advocate must address certain matters in the review and do so accurately; the trial defense counsel may choose not to address any matter if he believes so doing is in his client's best interests.

I agree with the majority's comments concerning deterrence.

FELDER, Judge, concurring in the result:

I am in disagreement with the majority opinion to the extent that it implies that the ultimate responsibility for the preparation of a review that is neither erroneous, inadequate nor misleading is transferred from the staff judge advocate to the defense counsel. Historically, that obligation has rested squarely on the shoulders of the staff judge advocate and the decision of *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975), was not designed to free him from that responsibility.

Similarly, I disagree with the view that the defense counsel by his failure to challenge a review waives all errors save those that would result in a manifest miscarriage of justice. In the absence of an affirmative defense waiver, I believe curative action should be taken on appeal whenever a review has materially prejudiced the substantial rights of an appellant. *See* Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a).

I concur with the result because the error, although not waived, did not prejudice the appellant.

MOUNTS, Judge with whom Senior Judge CARNE and Judge MITCHELL join, dissenting in part and concurring in part:

In *United States v. Goode, supra,* the United States Court of Military Appeals stated the following rule as to waiver:

"The failure of counsel for the accused to take advantage of this opportunity within 5 days of said service upon him will *normally* be deemed a waiver of *any error* in the review." (Emphasis added; 23 U.S.C.M.A. at page 370, 50 C.M.R. at page 4, 1 M.J. at page 6.)

The majority opinion emphasizes the "any error" part of the rule without fully discussing the limiting factor of the word "normally."[1] It appears by inference that

---

*The erroneous statement concerning the maximum imposable sentence appears on the first page of the review. Other portions of the review accurately advise concerning the maximum sentence that could be approved as a result of the guilty plea agreement and the sentence imposed by the court. Looking at the review as a whole, the misadvice of the first page perhaps should not be considered prejudicial.

1. We notice in the recent decision of *United States v. Cree*, 24 U.S.C.M.A. 18, 51 C.M.R. 68, 1 M.J. 210 (1975), a possible innuendo that the Court of Military Appeals does not intend *Goode* to cut the broad swath envisioned by the majority opinion. In *Cree*, the staff judge advocate's post-trial review included a potentially damaging summary of the evidence and an enumeration of the elements of the offense of which the accused was acquitted, contrary to

this limitation is discussed in footnote 10, wherein it is stated in part:

"It should be noted that the application of this waiver provision would, of course, be subject to the same limitations, e. g., manifest miscarriage of justice, as any other waiver rule. . . ."

As noted the manifest miscarriage of justice limitation is inherent in any other waiver rule and it would therefore not be necessary to add the limiting word "normally" if a manifest miscarriage of justice were contemplated as the only limitation to the rule. We find that a greater limitation is mandated by the use of the word normally.

In addition, the majority opinion notes the following:

"The Court appropriately recognizes that the trial defense counsel shares with the staff judge advocate the duty to insure that the convening authority receives the most accurate information possible to aid him in the exercise of his broad prerogatives relative to findings and, more particularly, the sentence."

We would go further and state that the staff judge advocate has the primary duty in certain areas to insure that the convening authority is properly informed and therein lies the inherent problem with the majority opinion. If the defense counsel's failure to detect any and all errors is treated as a complete waiver, the function of the defense counsel is altered to the status of proofreader for the staff judge advocate. The United States Court of Military Ap-

peals in *Goode* did not intend to shift all the burden to the defense. The staff judge advocate was not relieved of his legal obligation to properly advise the convening authority and provide him with adequate guideposts to determine an appropriate disposition of the case.[2] The United States Court of Military Appeals in *Goode* was dealing with adverse matter from outside the record which the accused had no opportunity to rebut. Thus to the extent that the rule of the Court as to "any errors" went beyond errors from matter outside the record, the rule is based on dicta and should be strictly construed. Combining these factors; the limitation provided by the word "normally," a strict construction of "any errors" and the reasonable result of keeping the primary duty for accuracy of the review with the staff judge advocate, we hold that the majority opinion is too all inclusive in its concept of waiver.

When adverse comments are made from outside the record, the trial defense counsel is in a unique position, due to his attorney-client relationship with the accused, to protect the accused's interests by aiding the accused to rebut or explain the adverse matter. It is wholly appropriate to invoke the doctrine of waiver when a defense counsel has an opportunity to rebut information based on his attorney-client relationship and decides to take no action. This is a discretionary act by the defense counsel based on his legal skills while privy to the

---

the provisions of paragraph 86*b* (2) of the Manual for Courts-Martial. Although two months previous to the *Goode* effective date of 15 May 1975, the trial defense counsel was served with the review pursuant to local standard operating procedure. He made no objections. On appeal, however, appellate defense counsel made the error in the review the second of two assignments of error. The Court of Military Review affirmed without comment. After ignoring the first assignment of error, the Court of Military Appeals granted review on this very issue and two judges wrote separate affirming opinions. Judge Ferguson, however, wrote a scathing dissent, seeing clear prejudice to the defendant and urging reversal despite service of the review on defense counsel. In spite of the freshness of the *Goode* opinion, nowhere was the defense waiver doctrine mentioned in

*Cree*. Only Judge Cook mentioned the *Goode* requirement of service at all, and then only in a footnote. *See* 51 C.M.R. at 69, 1 M.J. at 211. Granting review on this particular assignment of error, deciding it so soon after *Goode*, and yet omitting an appropriate opportunity to at least pay lip-service to the waiver doctrine attracts a second glance. Even though no legal requirement demanded the mention of the *Goode* waiver rule, we wonder whether a Court of Military Appeals as committed to a new strict waiver doctrine as the majority perceives it to be would pass up the unique opportunity to either clarify by dicta, their waiver rule or simply deny *certiorari*.

2. *United States v. Smith*, 23 U.S.C.M.A. 98, 48 C.M.R. 659 (1974).

accused's needs and desires. Therefore, the defense counsel should be held responsible to insure accuracy in the review not only for adverse comments outside the record but for any information in the review the accuracy of which can be substantially enhanced by the defense counsel's attorney-client relationship with the accused. Such information pertaining to the sentence portion of the review would be; the personnel data, the summary of the post-trial interview, appropriateness of sentence, and any other matters dealing with clemency, such as the civilian and military background of the accused. In addition, there are certain other matters of the review dealing with the legal analysis of the findings. These are; summarization of the evidence, discussion of the elements of the offense, affirmative defenses and trial procedures. In our view the defense counsel should also be responsible for the accurate recital of certain of these matters which fall within his special province because of the attorney-client relationship with the accused. These certain matters are; proper characterization of affirmative defenses and accuracy of that portion of the summary evidence which deals with defense evidence. These then would constitute the "any errors" which would be waived in both the findings and sentence portion of the review. The accuracy of the remaining parts of the review, particularly the requirements placed upon the staff judge advocate by paragraph 85b, MCM 1969 (Rev.),[3] would properly remain with the staff judge advocate, except as modified herein. Thus in the case *sub judice* we would find non-waivable error in the misstatement of the maximum punishment since the accuracy of that portion of the review remains the responsibility of the staff judge advocate.

Due to the well-recognized jurisdictional limits on sentencing of a special court-martial and the convening authority's apparent knowledge of these very basic concepts, we would find no prejudice despite the prior history of curative actions taken by this Court in similar cases.[4] A convening authority should be presumed to know the maximum limits for punishment of a special courts-martial and the inadvertent addition of the maximum punishment for a general courts-martial should in no way prejudice the accused. We agree with the remaining discussion of the alleged errors by the majority.

---

**3.** It is noted that the United States Air Force Court of Military Review in the case of *United States v. Cummins*, 1 M.J. 851 (A.F.C.M.R. 28 April 1976), relied upon paragraph 85b, MCM 1969 (Rev.), as the test for determining waiver.

**4.** *United States v. Bruce*, 46 C.M.R. 968 (A.C.M.R.1972).