**UNITED STATES, Appellee,**

v.

**William T. MORRISON, Sergeant, U. S. Marine Corps, Appellant.**

No. 33,177.

NCM 76–0783.

U. S. Court of Military Appeals.

Oct. 3, 1977.

Captain Jay C. Keithley, USMC, argued the cause and prepared the briefs for Appellant, Accused.

Lieutenant Commander A. K. Llewellyn, JAGC, USNR, argued the cause for Appellee, United States. With him on the briefs were Lieutenant Colonel P. N. Kress, USMC and Lieutenant Commander N. P. DeCarlo, JAGC, USN.

Opinion of the Court

COOK, Judge:

Contrary to his plea, the appellant was convicted by a special court-martial military judge sitting alone of wrongfully possessing marihuana in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. This appeal questions the adequacy of the staff judge advocate's post-trial review.

Warrant Officer Avery testified that the appellant was interviewed on September 30, 1975, and during this interview the appellant was asked to consent to a search of his personal effects. Appellant initially refused to consent, but a short time later he changed his mind and executed a consent authorization form. The ensuing search produced a quantity of marihuana and various items of evidence tending to show the appellant's ownership of the forbidden substance. Although the defense objected to the scope of the search, there was no issue raised as to the validity of the consent. Warrant Officer Avery also testified the appellant was interrogated after the search and advised of his rights. See Article 31, UCMJ, 10 U.S.C. § 831; United States v. Tempia, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967). While the appellant initially waived his rights and answered some questions, he subsequently requested a lawyer and the interview was terminated.

In his post-trial review, the staff judge advocate summarized the testimony of all the witnesses. His summary of Warrant Officer Avery's testimony included those portions which discussed the appellant's initial refusal to consent to a search and his subsequent request for a lawyer. Additionally, the staff judge advocate repeated the appellant's initial refusal to consent when

he summarized the evidence that was produced by the consensual search. On appeal, the appellant submits these references in the post-trial review were made in a manner which raised an inference of guilt from an assertion of his constitutional rights.

A copy of the post-trial review was served upon the trial defense counsel on February 25, 1976, and no deficiencies in the review were asserted by that counsel. As we observed in *United States v. Goode*, 23 U.S.C.M.A. 367, 370, 50 C.M.R. 1, 4, 1 M.J. 3, 6 (1975), a failure to submit challenges to the review within 5 days of service "will normally be deemed a waiver of any error in the review." *Accord, United States v. Barnes*, 3 M.J. 406 (C.M.A.1977). However, appellants submits that the present case involves *abnormal* circumstances which make the doctrine of waiver inappropriate. We disagree.

A perusal of the post-trial review reflects that the staff judge advocate did not state that appellant's assertion of his rights could be considered as evidence against him. Rather, he merely summarized the testimony which was presented during the trial. Nevertheless, the appellant contends the manner in which the testimony was summarized raises an inference that such an assertion could be so used and, absent specific instructions to the contrary, there is a fair risk that the supervisory authority considered the assertion against him. Even if we assume *arguendo* the review is subject to the appellant's present interpretation, at most, the review presents an ambiguity which can be interpreted in both a proper and an improper manner. The trial defense counsel obviously did not interpret the review in the manner urged by the appellant on appeal, as is evident from his failure to submit objection thereto. Thus, a specific

statement in a post-trial review that an assertion of a constitutional right can be used against an accused is not involved and we do not now address the issue of whether the *Goode* waiver rule would be applicable under such circumstances. *Compare United States v. Walters*, 22 U.S.C.M.A. 516, 48 C.M.R. 1 (1973), *with United States v. Martin*, 16 U.S.C.M.A. 531, 37 C.M.R. 151 (1967). *See also United States v. Moore*, 1 M.J. 390 (1976). Accordingly, the present case involves no issue which would preclude the application of the waiver rule announced in *Goode*.[1]

The decision of the United States Navy Court of Military Review is affirmed.

PERRY, Judge (concurring):

I agree completely with Judge Cook's opinion resolving the issue before the Court. I comment only to add that I also am in accord with the views expressed by Chief Judge Fletcher concerning the unduly elevated status heretofore accorded the staff judge advocate's post-trial review.

FLETCHER, Chief Judge (concurring in the result):

I concur in the majority's conclusions that there are no statements in this review that present incorrect advice to the convening authority on the standard for evaluating the voluntariness of the accused's pretrial statement,[1] or cause that officer to draw impermissible inferences from an assertion by this accused of his constitutional rights.[2] Hence, this case, unlike *United States v. Martinez*, 1 M.J. 280 (1976), does not require reversal; that decision I feel makes it clear

---

1. A majority of the Court has not, as the Chief Judge has in his opinion concurring-in-the-result, reevaluated Article 61 of the Uniform Code of Military Justice and repudiated the provisions in the Manual for Courts-Martial, United States, 1969 (Revised edition), relating thereto and our earlier cases on the subject. Nevertheless, I am impelled, because of ramifications in other areas of court-martial procedure, to declare my specific disagreement with

the Chief Judge's statement in his opinion that the functions of the staff judge advocate "include the responsibilities of being the chief prosecutor."

1. *See United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

2. *See United States v. Noel*, 3 M.J. 328 (C.M.A. 1977).

that the waiver doctrine expressed in *Goode*[3] is inapplicable in such an instance. The all-too-frequent scenario presented in this case requires that I comment further.

Each time we are faced with a complaint concerning the adequacy of a post-trial review, we find ourselves engaged in a form of mental gymnastics attempting to reconcile the elevated status we have given the post-trial review of the staff judge advocate in our past decisions. Now in my opinion is the proper time to reevaluate Article 61[4] unencumbered by the detailed exactitudes of paragraph 85*b*, Manual for Courts-Martial, United States, 1969 (Revised edition), or the plethora of cases examining that provision.

Article 61, Uniform Code of Military Justice, must be read in conjunction with Articles 59–65. Article 61 simply requires that:

> The convening authority shall refer the record of each general court-martial to his staff judge advocate or legal officer, who shall submit his written opinion thereon to the convening authority.[5]

An opinion is defined in *Webster's New Collegiate Dictionary* (1975 edition) as follows:

*1a:* a view, judgment, or appraisal formed in the mind about a particular matter *b:* APPROVAL, ESTEEM *2a:* belief stronger than impression and less strong than positive knowledge *b:* a generally held view *3a:* a formal expression by an expert of his judgment or advice *b:* the formal expression (as by a judge, court, or referee) of the legal reasons and principles upon which a legal decision is based.

The staff judge advocate, notwithstanding his title, is not a judicial officer, nor in my opinion was he intended to be by Congress after the Military Justice Act of 1968 (Pub.L. 90–632). He is instead, for all practical purposes, the chief counsel for the given command among whose various functions include the responsibilities of being the chief prosecutor. His task under Article 61, therefore, is to render a formal expression of his judgment and advice to the convening authority as that officer's chief legal expert.

Examining this concept in conjunction with Articles 59(b) and 63, it appears that the necessary Codal prerequisites for a proper post-trial review are as follows:[6]

---

3. *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975).

4. Uniform Code of Military Justice, 10 U.S.C. § 861.

5. Article 61, UCMJ, remained intact from the 1951 Act, and examination of the Congressional hearings reveals that the provision passed with virtually no comment or question as to its meaning. Examination of the hearings concerning the related concepts under Article 34 reinforces the idea graphically that it was the intent of Congress that the staff judge advocate in each instance prepare an opinion or advice which sets forth the necessary information upon which the convening authority may act as prescribed under the Code. The concerns expressed dealt with fears that the convening authority would simply adopt the statements of the staff judge advocate rather than exercise discretion. I feel that these concerns were among the reasons that Congress chose to have the convening authority act only after receipt of a legal opinion from his advisor rather than the type of document which has evolved as a consequence of the provisions of paragraph 85 *b*, Manual for Courts-Martial, United States, 1969 (Revised edition).

Further, I find nothing in either the language of Article 61 or the relevant legislative history to support the Manual language or our cases (*see United States v. Littleton*, 23 U.S.C.M.A. 279, 49 C.M.R. 454 (1975); *United States v. Luzzi*, 18 U.S.C.M.A. 221, 39 C.M.R. 221 (1969); *United States v. Stam*, 50 C.M.R. 90 (A.C.M.R. 1975); *United States v. Determann*, 42 C.M.R. 843 (A.C.M.R.1970), petition denied 42 C.M.R. 355 (1970) ), which authorize the inclusion of matters from outside the record on either findings or sentence within the review. Nothing in Article 61 indicates anything other than Congressional desire for the convening authority to have the benefit of the opinion of his legal advisor on the matters of trial prior to his action under Article 64. Regardless of whether these matters have relevance to the convening authority in his exercise of discretion on either findings or sentence under Article 64, it was not the intent of the drafters of the Code that such matters form a part of the review under Article 61.

6. The format set out in the text of this opinion is not intended to be all inclusive, but instead merely an outline of what the Code requires to satisfy the Congressional intent. Clearly, for example, the unbridled discretion given the

1. Presenting an opinion by simple statement as to the existence of errors of law

   A. If an error(s) of law is perceived, then an opinion is required as to: (1) whether the error materially prejudiced the substantial rights of the accused, and

   (2) if so, the available remedies.

2. Setting forth the offense(s) charged with:

   A. a delineation of the elements of the offenses and the relationship of the evidence presented at trial sufficient to allow an informed decision by the convening authority under Article 64;[7] and

   B. a detailing of all lesser included offenses raised by the evidence, listed in order of severity of the maximum prescribed penalty.[8]

Turning to Article 64, I would have the staff judge advocate state whether the findings and sentence were within the statement of law, as well as whether there was a sufficient factual basis for both. In these matters references to the transcript, as opposed to the present paragraph 85*b* requirement of summation of all the testimony,[9] for authority should be utilized.[10]

---

convening authority under Article 64 requires the reviewer to at least present the convening authority with those clemency recommendations given at trial or by the court personnel (judge or members), and sufficient biographical data so that the vast array of powers invested in that officer can be exercised as Congress intended. *See* note 13.

7. *United States v. Barnes,* 3 M.J. 406 (C.M.A. 1977) (Fletcher, C. J., concurring). *See United States v. Hamm,* 50 C.M.R. 215 (A.C.M.R.1975).

8. *See Index and Legislative History, Uniform Code of Military Justice* (Washington, D.C. 1950), Hearings before a Subcommittee of the House Armed Services Committee on H.R. 2498, 81st Congress, 1st Session, pages 1174–1185.

9. As clearly demonstrated by such cases as *United States v. Samuels,* 22 U.S.C.M.A. 238, 46 C.M.R. 238 (1973) and *United States v. Cruse,* 21 U.S.C.M.A. 286, 45 C.M.R. 60 (1972), our standards of requiring summation of the evidence, and yet embossing that requirement with the concept that the reviewer must be "necessarily selective" in the summation of the evidence he presents, has produced a wealth of litigation and confusion without ever satisfying the mandate of Congress. This problem has persisted in the sentencing areas as well. *Compare United States v. Boatner,* 20 U.S.C. M.A. 376, 43 C.M.R. 216 (1971) and *United States v. Rivera,* 20 U.S.C.M.A. 6, 42 C.M.R. 198 (1970) with *United States v. Horton,* 23 U.S.C.M.A. 365, 49 C.M.R. 824 (1975) and *United States v. Edwards,* 23 U.S.C.M.A. 202, 48 C.M.R. 954 (1974). The additional problems from referring to offenses of which the accused was found not guilty (*United States v. Lindsey,* 23 U.S.C.M.A. 9, 48 C.M.R. 265 (1974)) has resulted in more gymnastics by the Court in attempting to reconcile past decisions with the language of the Code. *United States v. Cree,* 1

M.J. 210 (1975). As I stated in *Cree,* despite my serious misgivings as to the motive of the reviewer, I had to concur because of the existing presumption that the convening authority reads, or certainly is entitled to read, the record prior to taking his action. The legislative hearings indicate that the drafters of the Code recognized this was merely an option of the convening authority and expressed a recognition that he might in his discretion take action to affirm, modify, suspend, remit, or disapprove all or part of the findings or sentence without having read the record. *See Index and Legislative History, supra* at 1182–84.

Given this assumption both by the drafters of the Code and our past decisions, I feel it all the more imperative that the post-trial review be structured as set forth in the text of this opinion. The very problems presented in this case—the fear that the convening authority upon reading the summation of the testimony of the warrant officer and discovering that the defendant had initially refused to consent to a search of his belongings as well as initially requested the assistance of counsel in reliance upon his constitutional rights under the Fourth and Fifth Amendments, would view less favorably the defense contention that the marihuana found had been placed there without the knowledge of the accused—could easily have been avoided by such a format without sacrificing the goal of giving the convening authority an accurate opinion. I do not believe that the review should ever have evolved into the full blown relitigation of the trial (and unfortunately at times matters outside the record of trial) with "selective" recitations or summations from the transcript, which is available to the convening authority to read for himself, followed by voluminous (and at times erroneous) legal authority.

10. I see no need in most instances for citations to case authority to justify conclusions set forth in the opinion of the staff judge advocate;

There should be a statement explaining the optional areas of discretion as to both findings and sentence. The matters referred to in Articles 62[11] and 63 need comment by the staff judge advocate only in those instances where a procedural step is required by the convening authority.

The relationship of counsel and client is a prerequisite to an adequate post-trial opinion/review; reliance by the convening authority on his counsel's advice is mandated with the overlay imposed by Congress[12] in recognition that the ultimate authority for retention must be unbridled in command.[13] I feel that only by having the post-trial review fit the Codal, as opposed to the Manual, considerations can we achieve compliance with the intent of Congress. We, and the drafters of the Manual, have created the situation whereby the chief counsel

for the convening authority, instead of rendering *his* opinion as required by the Code, attempts to present that opinion in the format of a legal and factual compendium covering each facet and each litigant's viewpoint of the various issues. I believe this situation is unsound and unrealistic, for it places the staff judge advocate in a position of rendering a digest rather than *his* opinion. Further, it ignores both the lack of precision of this format, and the effect of the viewpoint inherent in the office of the staff judge advocate. Congress must have recognized these factors in determining the nature of a post-trial review, and consciously chose to have an accurate and professional opinion[14] rendered by the staff judge advocate for the convening authority's consideration, rather than the creature which has evolved.[15] Adherence to the precise intent of Congress is long overdue.

---

the basic need is for concise, accurate advice, not a condensed appellate pleading.

11. This is subject, of course, to the limitations set forth in *United States v. Ware*, 1 M.J. 282 (1976), and *United States v. Rowel*, 1 M.J. 289 (1976), that Article 62 contemplates only reconsideration, not reversal.

12. *See* note 5.

13. The following excerpt from the aforementioned hearings should readily demonstrate this intent by the drafters of the Code:

Mr. BROOKS: Furthermore, I think your commentary goes far beyond that article because in the last sentence of your commentary you say "he may disapprove a finding or sentence for any reason."
Mr. LARKIN: That is right. That is the intention.
Mr. BROOKS: Which means that he can just disapprove it.
Mr. LARKIN: That is right.
Mr. BROOKS: He doesn't have to read the record or anything else. He can just say disapproved and it is through.
Mr. LARKIN: That is right. In the normal course of the review of the case he looks to its legality and the establishment of the facts and the appropriateness of the sentence and he shouldn't approve anything that is wrong or illegal, but he can disapprove it if it is illegal, if it is wrong, and for any other reason.
Mr. BROOKS: Or for no reason at all?
Mr. LARKIN: Or for no reason at all.
Mr. RIVERS: That is right.
Mr. LARKIN: The classic case that I think General Eisenhower stated in his testimony

before your subcommittee last year was that even though you might have a case where a man is convicted and it is a legal conviction and it is sustainable, that man may have such a unique value and may be of such importance in a certain circumstance in a war area that the commanding officer may say "Well he did it all right and they proved it all right, but I need him and I want him and I am just going to bust this case because I want to send him on this special mission".
*Index and Legislative History, supra* at 1184.
The above discretion on the part of the convening authority is subject only to the requirement we imposed in *United States v. Keller*, 23 U.S.C.A. 545, 50 C.M.R. 716, 1 M.J. 159 (1975), that in those instances where he opts for a course of action different from that recommended by his legal advisor that he put his reasons for doing so in writing.

14. Nothing in my proposal should be interpreted as lessening or affecting the requirements of impartiality as to both the reviewer and convening authority as set forth in our decisions of *United States v. Sierra-Albino*, 23 U.S.C.M.A. 63, 48 C.M.R. 534 (1974); *United States v. Howard*, 23 U.S.C.M.A. 187, 48 C.M.R. 939 (1974); *United States v. Lacey*, 23 U.S.C.M.A. 334, 49 C.M.R. 738 (1975), and their progeny. These requirements, as well as strict adherence to the guidelines of the Code of Professional Responsibility concerning integrity and accuracy in any legal activity, shall continue to be zealously enforced in our decisions.

15. I recognize that my proposal may be interpreted as subjecting the accused to an action

based upon a review which fails to fully inform the convening authority so that he may exercise his discretion under Article 64 in a meaningful fashion. Rather than merely lessening the duties of the staff judge advocate, I feel that this proposal simply more accurately reflects the intent of Congress under Article 61, and the real nature of the relationship between the staff judge advocate and command. In addition to the protections set forth in note 13, I feel that Congress more than amply provided the accused with a vehicle for presenting his "case" through counsel to the convening authority under the terms of Article 38(c), especially in consideration of our decision in *United States v. Cruz-Rijos*, 1 M.J. 429 (1976), interpreting the requirements of Article 54.