UNITED STATES

v.

Mario S. REED, Seaman Apprentice,
U. S. Coast Guard.

CGCMS 23099
Docket No. 811.

U. S. Coast Guard Court of
Military Review.

Sentence Adjudged 28 Feb. 1975.

Decided 13 March 1978.

Trial Counsel: LT David J. Kantor, USCGR.

Defense Counsel: LT Michael G. Barrier, USCGR.

Appellate Defense Counsel: LT Patrick S. Antrim, USCGR.

For the United States: LT G. Alex Weller, USCGR.

## OPINION

MAGUIRE, Judge:

### I

The issues in this case are two:

(1) Was the Chief Counsel of the Coast Guard, acting in his capacity as delegate of the General Counsel of the Department of Transportation (JAG), authorized to return to Commander, Third Coast Guard District, for "a new (or corrected) post-trial review" a case on which that Commander, authorized to convene general courts-martial, had taken action to approve as Convening Authority, with a sentence including an approved bad conduct discharge? and,

(2) Was the delivery to Defense Counsel of an unsigned "Xerox's copy of a document on plain paper, purportedly addressed by a named "legal officer" to Commander, Third Coast Guard District, "via: District Legal Officer" [with no indication of adoption, approval, or other action by a "District Legal Officer"], having as its "Subject," "Special Court-Martial, *United States v. SA Mario S. REED, USCG*; legal officer's review and advice," service upon Defense Counsel of the post-trial advice within the meaning of *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1 [ 1 M.J. 3] (1975)?

This case has been before this court once before, and before the Court of Military Appeals, which had set aside the Convening

Authority's action and had ordered that the record be referred to another appropriate authority for review. *United States v. Reed*, 25 U.S.C.M.A. 120, 54 C.M.R. 120, 2 M.J. 64 (Interim) (1976). As a consequence, the record of trial had been referred by the Chief Counsel to Commander, Third Coast Guard District, for convening authority action.

The original sentence of the court-martial had been to a bad conduct discharge, forfeiture of $210.00 per month for a period of four months, and confinement at hard labor for a period of four months. The original (actual) Convening Authority approved the discharge and the forfeiture and reduced the confinement period to two months. As approved by the Convening Authority the sentence had also been approved by the officer exercising general court-martial jurisdiction.

When the record was forwarded to Commander, Third Coast Guard District, the case was ready, anew, for convening authority action.

On or about 5 March 1977 the document described in the second framed issue above was delivered by mail, with no further matter, to Defense Counsel.

On or about 10 March 1977, according to later elicited statements, the signed original of that document was delivered to the reviewing authority, covered by an "endorsement" reading thus:

"FIRST ENDORSEMENT on LT . . . . . ltr 5814 of 3 March 1977"

"From: District Legal Officer"

"To: Commander, Third Coast Guard District"

"Subj: Special Court-Martial, *United States v. Mario S. REED, USCG* : legal officer's review and advice."

"1. LT . . . . review and advice is adopted as my review and advice with no exception."

"[SIGNATURE]"

This advice recommended approval, after "reassessment," of "only so much of the sentence as provides for a bad conduct discharge, forfeiture of $210.00 per month for four months, reduction to Seaman Recruit and confinement at hard labor for two months." The officer exercising general court-martial jurisdiction, acting as Convening Authority, approved "only so much of the sentence as adjudged a bad conduct discharge, reduction to seaman recruit (E–1), confinement at hard labor for two months, and forfeiture of $210.00 per month for four months." He then forwarded the record of trial to the Chief Counsel [JAG] "for review by a Court of Military Review in accordance with Article 65(b), Uniform Code of Military Justice.

The Chief Counsel noted that the record contained no certification of service of post-trial review upon counsel, and also that the "approval" of a reduction in pay grade was incorrect. He returned the record to the convening authority for a "new (or corrected) post-trial review by the Staff Legal Officer" and a new action.

Thereupon a new review was prepared by the same person who had prepared the earlier one. It contained a proper statement of the sentence as formerly approved by the original convening authority and recommended approval of that sentence. The new review was captioned and routed as the earlier had been and was delivered to the reviewing authority with a certificate of service upon counsel, signed by the drafter-signer of the advice itself.

Convening authority action was taken on 17 May 1977 and the case was referred to this court.

Attached to the record there is an affidavit, sworn to on 12 May 1977, to the effect that the affiant, a Coast Guard yeoman, had mailed an unsigned copy of a signed staff legal officer's review dated 3 March 1977 to the Defense Counsel in the case. This affidavit goes, of course, to the document connected with the review process prior to the Chief Counsel's return of the record to Commander, Third Coast Guard District.

## II

Appellant contends that the Chief Counsel's action returning the record was unau-

thorized and violative of the Code provisions and that, the subsequent acts being a nullity, there was a failure of compliance with the "Goode" rule. He urges that the least remedy required is a further post-trial review, but prays that, because of the long period of time consumed by the process, the one significant element left in the sentence, the discharge, be disapproved.

Government counsel's position is that what was initially delivered to defense counsel was in fact the post-trial review, and that the affidavit of 12 May 1977 sufficiently meets the requirement of the "Goode" rule that the record reflect that service. Should there have been error there, however, it is contended that the second action, undertaken under proper authority from the Chief Counsel, not only cured the presumably inchoate error in the sentence approval but established full compliance with the "Goode" rule.

### III

■ Since the Court of Military Appeals had directed the Chief Counsel to refer this case to an appropriate authority, the status of the case upon initial delivery to Commander, Third Coast Guard District, was legally that of a completed trial by court-martial awaiting initial convening authority action on the record. When that officer had acted initially, the status of the case was that of one in which the sentence included a bad conduct discharge approved by an officer exercising general court-martial jurisdiction.

Article 65 of the Code directs that the record in such a case be "sent to the appropriate Judge Advocate General to be reviewed by a Court of Military Review." Article 66 further provides that "The Judge Advocate General shall refer to a Court of Military Review the record in every such case." The directive here is clear, unambiguous, and mandatory. The JAG has no course permitted but the ministerial function of referring to a Court of Military Review. It confers on him no power to interpose an intermediate review. (Article 69's last sentence, of course, does not apply to this case.)

It has been urged that paragraph 89*b*, MCM, as an administrative interpretation of these statutory provisions, authorizes the JAG to give advice or instructions to any convening authority at any time when on "review . . . or examination" he notes any improper action on the part of a convening authority. The Manual provision does not do this at all. It clearly differentiates between "review" under certain sections of the Code and "examination" under Article 69, and the reference to the Judge Advocate General is limited by the distinction. There is no "examination" provided for the instant case; there is a "review." The review is only by a Court of Military Review.

■ No attempted reading of paragraph 95, MCM, can be invoked to justify the procedure followed here because the first sentence deals only with defects in the record at the trial level and the second sentence speaks of "review" pursuant to Articles 65(b), 66, 67, or 69, and speaks only of incompleteness, ambiguity, and clerical errors in a convening authority's action. The JAG is not a "reviewer" of this case under any of the cited sections and the errors found are not of the class considered.

The Manual does not, if it could, purport to change the effect of the statutory provisions. It is in fact in absolute consistency with the review provisions of the Code, and the action taken by the Chief Counsel in this case was unauthorized and was in conflict with the directive of Articles 65 and 66.

This is not to say that the action was not well-intentioned and would not have been, in the absence of detailed statutory provisions, reasonable and effective. It cannot, however, be approved.

### IV

The action taken by the Chief Counsel brought about three results:

(1) a new "staff legal officer review" was prepared and submitted to the Commander, Third Coast Guard District,

via the same routing as the earlier version;

(2) copy of this review was provided to the defense counsel and a notation to that effect was made in the record; and

(3) an affidavit was attached to the record, made by a yeoman in the Third District Office, that a copy of the post-trial advice on the first Third District review of the case had been mailed on 3 March 1977.

If the action of the Chief Counsel and its results are taken, because of the unauthorized character of that action, as a nullity, the true record of the case now before the court is that which it was on its first submission by the Commander, Third District. It is possible, nevertheless, that the affidavit made on 12 May 1977, could be viewed as the required notation in the record that the rule in the "Goode" case had been complied with. More fundamental, though, is the question whether the document provided in fact to the defense counsel was a copy of the "written review" required by Articles 61 and 65(b).

■ Article 61 speaks of advice to the convening (reviewing) authority by "his staff judge advocate or legal officer." It is this advice which the rule in the "Goode" case requires to be timely served on defense counsel. The Coast Guard Supplement to MCM, taking notice of the court-made rule, has this to say of "post-trial advice," in section 0119:

"a. Ordinarily the senior Legal Officer of an officer exercising general court-martial jurisdiction is the Legal Officer of that command within the meaning of Articles 34, 61, and 65, UCMJ. If, however, one or more Assistant Legal Officers are attached to such a command, and if it appears that the senior is or may become disqualified for any reason from acting as Legal Officer in any particular case or for a specific period of time, a convening authority may, in addition to the action authorized by paragraph 85a, MCM, designate, in writing, a junior to act as his Legal Officer in any particular case or for a specified period of time if that junior officer is otherwise qualified."

Assuming that this is validly promulgated, we perceive no conflict in spirit or substance with the statutory command. It is hard to say whether the Supplement is being prescriptive or descriptive, and we do not have to force a conclusion. What is clear in the Supplement, and is clear in the statute, is that some individual (lawyer) is chargeable by the reviewing authority with the duty to provide him with "*his* opinion as required by the Code" in the "relationship of counsel and client" on the case under review. (Quoted language from Fletcher, C. J., *U. S. v. Morrison*, 3 M.J. 408, 412). This does not contemplate a committee.

We may take notice of the varieties of format adopted for this presentation of post-trial review in the Coast Guard, as well as of the assigned functions of the identified personnel in the scheme of things. Post-trial advice is sometimes couched in a form that reflects that a "district legal officer" advises his "district commander" on the case in hand. At times, as here, the advice purports to come from a person identified as "Legal Officer" to the district commander *via* an intermediary. Here the announced intermediary was the "District Legal Officer." In a recent case before this court there were two designated intermediaries, the "District Legal Officer" and the "Chief of Staff."

It appears to us a misconception of the role of the "staff judge advocate or legal officer" under the pertinent provisions of the Code to force the advice into the straitjacket of military correspondence with a "chain of command" format. We do not imply that a general court-martial authority may not use his staff as he sees fit, and we do not rule out his solicitation or acceptance of advice from others than his "lawyer." What we see is that there is one statutory requirement that there be advice of a lawyer, that the advice of the lawyer be a matter of record, and that disagree-

ment with that advice be also a matter of record (85c and 91a, MCM).

At the same time, we do not preclude the use of his subordinate by the "district legal Officer." We recognize, just as the Supplement section does, that he himself may have, and in most instances does have, staff assistants. It is entirely fitting that a staff assistant be used in the analysis, research, and even drafting stages of review preparation. This, we note emphatically, is not what is discussed in section 0119 of the Supplement. There, without necessarily agreeing that the section dictates that (1) the district legal officer must be the Article 61 advice-giver unless he is disqualified, and (2) if another than the district legal officer does not function under Article 61 the lawyer who does must be specifically designated in writing to do so, we see that only direct advice from the Article 61 advisor, whether it be the district legal officer or another, is envisioned. The section does not preclude the use of subordinates by the district legal officer in the formulation of his advice to the reviewer any more than it requires that advice prepared by another qualified person be subjected to intermediate official review before reaching the reviewing authority.

If the question presented here had been simply whether there had been a compliance with Articles 61 and 65(b) or not, whether a "staff judge advocate or legal officer" had or had not functioned to review and advise, the affirmative response could be worked out based upon the totality of the documents presented. Without quibbling over the style or form, and without fear of what might have happened had other factors appeared, it would have been easy enough to say: "Whatever the mold into which the advice was poured, the words 'is adopted as my review and advice' are defensible as fixing the opinion ultimately as that of the identifiable 'staff judge advocate or legal officer,' identified in fact as 'the district legal officer,' who directly in fact transmitted his opinion to the reviewing authority."

It cannot be denied, nevertheless, that the adoption of this format, possibly in supposed compliance with military custom, invites suspicion if not error. In the instant case, for example, the district legal officer added to the quoted words of adoption the phrase, "without exception." Other examples that have come before the court have used stereotyped language for "endorsements" on such advice, like: "Forwarded," or "Forwarded, approved." The analyst might be forced to construe the unadorned, "Forwarded," for example, as meaning "I am merely a conduit through which the statutory advisor has passed the written statement of review and advice, and I have no part in the Article 61 function at all." "Forwarded, approved" could then mean, "This is not my review and advice; it is that solely of the person who signed as advisor; but it is good advice."

It is good enough when nothing untoward has occurred, but the speculation is opened, since the format provides the means: What if the district legal officer has "exceptions?" or does not "approve?", or states grounds of disagreement?

A pragmatic concept may be considered here, since it is in fact an unstated part of one of the Government arguments in the case. In the real world, it goes, in the world of district legal offices and district commanders as we know it, the initially prepared advice of the staff assistant to the "District" legal officer would never see the light of day if it were not already previously approved by the district legal officer himself. If for some reason it was disapproved after preparation it would disappear and never be heard of again. Therefore, the "review and advice" in typed form, signed by the drafter, can be presumed to be the advice which will ultimately reach the district commander, and whether there are "endorsements" or not, by intermediary addresses, or whether the form of endorsement "forwarded", "forwarded, approved" or "adopted as mine, and forwarded," be the chosen expression, really does not matter overall. The quibble puts form over substance.

This, as above, may be all well and good in the ideal case and may provide grounds, after the fact, for rationalizing into correctness a procedure that has been imposed without good reason.

The form, however, has been imposed by the Government practice, not by the statute or the military courts. If the Government chooses to package the substance under a label of "poison" it cannot complain of objections against the form used.

This case, allowing for the most favorable speculations, illustrates just one way in which the chosen form can give rise to trouble.

■ If the advice to the Commander, Third Coast Guard District, was, as the record initially forwarded would have it, the advice of his District Legal Officer, it cannot be argued that that advice was communicated to the defense counsel, since the papers delivered to him bore no sign of concurrence, acceptance, adoption, or anything else, by the District Legal Officer. On the other hand, having provided a record which purports to show advice of and by the District Legal Officer, the Government may not now take the position that the review and advice were actually those of the "subordinate" (the document which was timely delivered to defense counsel). It goes without saying that the introduction of the intermediate addressees invites the recipient who has been "served" with the communication, incomplete in its military correspondence form, to wonder what the intermediate authority will interject between the first drafter's thoughts and the ultimate addressee, the reviewing authority, here Commander, Third Coast Guard District.

Our view then is that there was a failure of compliance with the rule in the "Goode" case in that a copy of the review and advice of the "staff judge advocate or legal officer" was not delivered to the defense counsel as required.

It is the Government, here, which has elevated the form over the substance and made the form decisive in the issue.

## V

■ It has been argued that Appellant is somehow estopped to urge error in connection with the delivery *vel non* on post-trial advice since the error as to the sentence to be approved was patent and since the good-faith delivery of the inchoate document should have elicited an inquiry from him as to what the document in fact was and as to possible correction of the sentence recommendation so as to avoid error by the convening authority. The Government is peculiarly vulnerable in posing this line.

Given a working knowledge of the habits in district legal offices, the recipient counsel could well have construed the missive delivered to him as an "advance copy" of a tentative review by a subordinate who possibly had hoped for some initial assistance from counsel before promoting the document up the "chain of command." Certainly, with so obvious an error, counsel could assume that the announced intermediate authority would correct it, and the ostensible course of the advice would have brought to him the intended review by the "District Legal Officer" which, it was to be hoped, would cure the error. It is not the fault of counsel that he never received what he had reason to expect any more than it was his fault that the adopting officer did not perceive and correct the error.

It is true that had the proper review been presented to counsel with the error enduring he would have been forced, in his reply and comment, to take it to the attention of the convening authority or risk a penalty. But a mere statement of the all embracing theory that the "Goode" rule is designed to minimize the retention of errors beyond convening authority action does not impute a duty to counsel to do the work of the Government side itself. The Government cannot argue that its errors in failure to comply with a rule designed to eliminate error, which puts a burden on the Government, somehow put a burden on an accused which he did not previously have.

## VI

■ As an alternative to the theory that the proceedings taken from the time of the

Chief Counsel's unauthorized act to the ultimate submission of the case to this court were a nullity, there is presented a thought that these proceedings were not a "mere" nullity but that certain elements could be regarded as *de facto* events which can be considered as bearing upon the fundamental question of military due process. Thus, the view goes, the Chief Counsel's act did result in a proper review, properly served upon defense counsel, with the error as to sentence expunged, and recognition of these realities leaves the way clear for this court to review the case on the merits and affirm the findings and sentence as correct in law and in fact despite everything.

It is completely unacceptable if orderly due process is to be maintained to allow that a series of errors act to cancel each other out under a benign view that no substantial prejudice attached. There were actually, in all, four errors in the post-trial review ordered by the Court of Military Appeals:

(1) a failure to note "service" of the advice in the record;

(2) a failure to serve a copy of the true advice;

(3) an approval of an illegal sentence; and

(4) an unauthorized diversion of the record.

The proposed "cure" to be recognized would operate partly by accident and partly by direct action in conflict with statutory directive. It is unacceptable that "due process" be allowed to have been accorded by accident and disregard of statute. The proceedings cannot be approved.

### VII

■ Of the several methods that suggest themselves as a remedy for the deficiencies here all but one grant an undeserved windfall of benefit to one party or the other. The extended delay in reaching finality to be necessitated by further proceedings is the least of the evils to be faced.

The review and action by Commander, Third Coast Guard District, are set aside and the record is returned to the Chief Counsel, United States Coast Guard, for submission to a different competent authority for review and action under Article 64, UCMJ.

Judge ALCANTARA concurs.

Judge BURGESS concurs in result and filed separate opinion.

Chief Judge ROSENWASSER and Judge LYNCH did not participate in the decision in this case.

BURGESS, Judge, concurring in result:

I concur completely with my colleagues on their analysis and conclusion concerning the first issue in this case. On the second issue, while I reach the same conclusion as does the majority, I have certain views concerning who is responsible to provide the opinion required by Articles 61, 65, and Paragraph 85, MCM, and how that person signifies concurrence in a prepared opinion.

The majority criticizes the manner in which the required advice was given to the convening authority in this case and in others. The majority also states that the statutory requirement is that there be advice of "a lawyer" in the "relationship of counsel and client" as a matter of record. Because of the criticism of the "chain of command" utilized in this case, I am concerned that the majority may be sanctioning the direct transmission of a legal staff assistant's signed advice direct to the convening authority without obtaining the concurrence of the district legal officer. I cannot agree that such a direct transmission is permitted by the Code. Rather, I conclude that the district legal officer, must be involved in the advice and this involvement must be demonstrated by his signature on the advice or a signed endorsement setting forth his concurrence with the advice signed by an assistant or any differences of opinion he may have together with the reasons therefor.

In the context of this case, the initial question is whether any authority requires the preparation of the staff judge advocate or legal officer's opinion. Because the

Court of Military Appeals set aside the original convening authority's action, the Commander, Third Coast Guard District, to whom the record was referred to carry out the order of the Court of Military Appeals, had to take convening authority action. Article 65, UCMJ, entitled "Disposition of records after review by the convening authority" does not by its literal terms apply to this situation. Nevertheless, Paragraph 85(a), MCM, states that, before acting on a record of a special court-martial involving a bad conduct discharge, a convening authority "will refer it to his staff judge advocate or legal officer for review and advice. See Articles 61 and 65." Because of the clear intention of Congress to have the serious sentence of a bad conduct discharge reviewed by a "staff judge advocate", I see no problem with the Manual setting up this procedure even though it is not expressly addressed by the code. The provisions of Article 61 require the convening authority in a general court-martial case to "refer the record to his staff judge advocate or legal officer". By contrast, Article 65(c) which addresses the handling of non-BCD special court-martial records provides for review by a judge advocate or "law specialist or lawyer of the Coast Guard." While the Code does not define "staff judge advocate", Chief Judge Fletcher describes him as the "chief counsel for the given command", whose task under Article 61 is to "render a formal expression of his judgment and advice to the convening authority as that officer's chief legal expert." *United States v. Morrison*, 3 M.J. 408, 410 (C.M.A. 1977). His characterization of the staff judge advocate is consistent with that of Judge Latimer in *United States v. Kema*, 10 U.S.C.M.A. 272, 27 C.M.R. 346 (1959), who concluded that Article 61 provides for review by the staff judge advocate "to gain the benefit of his legal knowledge together with his military experience." He also acknowledged that the officer holding the position of staff judge advocate has been elevated to that position of responsibility because of his "sound judgment and professional competence." Although the definition of a "legal officer" as "any commis-

sioned officer of the Coast Guard designated to perform legal duties for a command" is not enlightening, the use of the word "his", together with the realization that this responsible person is the equivalent of the Army "staff judge advocate", demonstrates that Congress intended that the senior legal officer on the staff performing legal duties for the command be involved with the opinion in a positive way. The less stringent review requirement for non-BCD special court-martials, i. e. review by a law specialist, strengthens this conclusion. This district legal officer involvement can be as author and signer of the opinion; if the record is reviewed by a subordinate, as signer thereof; or, if prepared and signed by a subordinate, as endorser, appropriately confirming concurrence with that opinion. Any opinion of a subordinate legal staff member which does not have the concurrence of this "chief counsel" is, in my view, not in compliance with Article 61 and is, therefore, defective.

Because of my view of the Congressional intention in drafting Articles 61 and 65, I also disagree with the majority that Section 0119 of the Coast Guard Supplement to the Manual for Courts-Martial does not conflict with the statutory spirit or command. This Supplement section grants the convening authority the authority, in addition to that authority set forth in Paragraph 85(a), to designate in writing a junior officer to act as his "Legal Officer" in any particular case where the assigned district legal officer is disqualified for any reason from acting in that capacity. The first two choices of action, in Paragraph 85(a) i. e. referring the entire record to another general court-martial authority with a staff judge advocate or legal officer to review the record, and, second, requesting the assignment of a staff judge advocate or legal officer (presumably from another command), are designed to ensure that, as contemplated by Congress, review by that seasoned and experienced staff judge advocate or the legal officer will take place. The third choice permits the issuance of regulations to permit the forwarding of the record to the Judge Ad-

vocate General for review and advice. In my view, this alternative is not a license for assigning the record to an officer with any less experience than the staff judge advocate or legal officer.

Paragraph 5(b), MCM, permits the issuance of regulations by the Secretary of the Department to govern the devolution of command in case of death, disability or temporary absence. Assuming that paragraph's application to the legal officer's review function, I do not think that grant of authority can override the Congressional purpose expressed in Articles 61 and 65. Presumably, the individual next in seniority will have the requisite experience to act in the assigned legal officer's stead or otherwise he would not be functioning in the "Acting" capacity. I think that the authority set forth in Paragraph 5(b) is limited to those situations where the named official is not present for duty and does not cover the situation where that individual is disqualified from acting. In my view, Section 0119 is unnecessary because Paragraph 85(a) provides a sufficient number of alternatives to obtain the necessary experience and should be utilized exclusively in case of disqualification of the district legal officer.

The last difference of opinion I have with the majority concerns the form in which the advice is to be given. Their apparent conclusion is that the district legal officer must sign the advice to avoid possible error. I have no argument with the majority that the district legal officer may use a staff assistant to prepare the opinion to be signed, after review, by the district legal officer. This, I think, is the preferred method of discharging this responsibility. However, I see no reason why the legal officer may not endorse an opinion prepared and signed by one of his assistants as long as he affirmatively states that he agrees with the opinion or, on the other hand, states any disagreement together with his reasons therefor. I agree that an endorsement "forwarded" does not express adoption or rejection but such noncommittal endorsements are easy to avoid. Where an endorsement method is chosen by the district legal officer, this action together with a proof of service upon defense counsel, must be taken early enough to comply with the dictates of *Goode, supra.*

Applying these principles to the case at hand, I agree that the advice provided defense counsel was not that of the staff judge advocate or legal officer and, therefore, there was no compliance with *Goode.*

I also agree with the majority's disposition of the case as expressed in paragraph VII.