**UNITED STATES**

v.

**Airman First Class Kevin A. BLACK, FR 570–55–8684, United States Air Force.**

**ACM 23496.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 25 Feb. 1982.

Decided 27 May 1983.

---

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain Kathleen G. O'Reilly.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major Michael J. Hoover.

Before KASTL, RAICHLE and SNYDER, Appellate Military Judges.

## DECISION UPON FURTHER REVIEW

RAICHLE, Judge:

Consonant with his pleas pursuant to a pretrial agreement, the accused was found guilty by a military judge sitting alone of numerous drug-related offenses. The approved findings and sentence were previously affirmed by this Court. *United States v. Black*, ACM 23496 (A.F.C.M.R. 17 June 1982). Upon appeal to the Court of Military Appeals, the accused alleged that he received ineffective assistance of counsel. The Government replied to the assignment of errors and moved to file an affidavit from the trial defense counsel, whereupon the accused requested permission to file his own affidavit. The Court of Military Appeals granted these motions and remanded the case to us for further review.

Before us, the accused argues that he received ineffective assistance of counsel in the presentencing proceedings because his trial defense counsel (1) failed to object to certain prosecution exhibits and argument, (2) introduced two defense exhibits which were not totally favorable to the accused, and (3) failed to adequately respond to the post-trial review of the staff judge advocate. We find that trial defense counsel was not ineffective as to (1) and (2). We agree with the accused's contention, ably presented in written and oral materials by appellate defense counsel, as to (3) and order appropriate relief.

I

An accused has the right to be defended by competent counsel, who exercises such competency throughout the proceedings. *United States v. Rivas*, 3 M.J. 282

(C.M.A.1977). In assessing an advocate's performance, his actions must fall "within a range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *United States v. Walker*, 21 U.S.C.M.A. 376, 45 C.M.R. 150 (1972). That an accused must show actual prejudice, should he wish an allegation of ineffective assistance of counsel to stand, is a premise well-grounded in federal law. *United States v. Owens*, 12 M.J. 817 (N.M.C.M.R.1981), *pet. denied*, 13 M.J. 220 (1982), and cases cited therein.

■ In this case we find no prejudice to the accused at the trial itself. With regard to the lack of objection to Prosecution Exhibit 11, an Airman Performance Report, and the introduction of Defense Exhibits B and C, we find these actions to have been tactical decisions consciously made by defense counsel. It is clear from the record that the entire defense theory of the case was that this innocent, 19 year old accused became sullied and corrupted by "the drug cesspool called Homestead Air Force Base," as referred to by defense counsel. As a result, the accused's once superior duty performance had seriously declined. The exhibits were allowed to come into evidence to support this defense theory.

The failure to object to Prosecution Exhibit 8, a brief four line statement of the person to whom the accused had sold cocaine, as alleged in Specification 1 of the Charge, also appears to have been a tactical decision. Indeed, even after the military judge called his attention to the hearsay nature of the statement, the trial defense counsel still maintained that he had no objection to its admission into evidence. There is no doubt that admission of the testimony of this witness would have been proper had he appeared in person since his testimony would show the facts and circumstances surrounding the offense. M.C.M., 1969 (Rev.), para. 75*b*(4). By consenting to the admission of Prosecution Exhibit 8, the trial defense counsel presented a sanitized version of the events presented to the court; if the witness had testified, a great

deal more "color" might have been expected. Thus, the trial defense counsel saved the accused from possible harm by consenting to admission of the exhibit, despite its hearsay nature.

We turn next to Prosecution Exhibits 1 and 9, a stipulation of fact and the confession of the accused, and those portions of the argument of trial counsel based thereon. The defense counsel registered no objection to either of these documents, both of which related prior uncharged misconduct on the part of the accused. Similarly, the defense did not object to the argument of trial counsel addressing these matters. The Government argues that both documents were admissible since they show a course of conduct on the accused's part to use and sell cocaine and other illicit drugs. Although we agree that these documents may have been admissible for this purpose on the merits if the accused had pled not guilty, we do not agree that they were admissible in sentencing proceedings where the accused pled guilty to the charges. *United States v. Mandurano*, 1 M.J. 728 (A.F.C.M.R.1975). As stated in *United States v. Taliaferro*, 2 M.J. 397 (A.C.M.R.1975):

> The issue of guilt having already been decided, admission of uncharged misconduct to show "motive, intent, or state of mind" was immaterial. The only purpose the evidence could serve at this juncture was to convince the court-martial that the accused was a bad man.

Accordingly, the trial defense counsel could have objected to their admission into evidence on sentence and to the argument of trial counsel based thereon. Nevertheless, we find no error here since again the record reveals that the defense lack of objection was a conscious tactical choice.

In his final argument trial defense counsel specifically referred to trial counsel's argument regarding the prior uncharged misconduct which was reflected in the accused's confession and stated his certainty that the court would not consider it in deliberations. He went on to point out that the accused had cooperated with base authorities and that it was obvious from the

confession that he told them everything that he ever did and would continue to cooperate. He then requested that the court consider this attitude on the part of the accused and what further information the accused could provide to help correct the drug problem on the base. Thus, it is apparent that the defense theory was to show that the accused had confessed all and was throwing himself on the mercy of the court. Further, we find no prejudice to the accused as the military judge assured counsel that he would disregard any irrelevant uncharged misconduct.

As we have stated previously, "[t]hat appellate counsel may disagree with certain trial tactics is scarcely grounds for declaring the conduct of the defense unreasonable and incompetent." *United States v. Cohen*, 2 M.J. 350 (A.F.C.M.R.1976). Counsel should not be judged with the benefit of hindsight. Tactical decisions, which are founded on what he perceived to be the best interest of his client at the time, should not be judged by second-guessing. *United States v. Cooper*, 5 M.J. 850 (A.C.M.R.1978). We perceive no ineffectiveness on the part of defense counsel as to these matters.

## II

We do, however, agree that trial defense counsel failed to adequately respond to the staff judge advocate's post-trial review which implied that the accused did not wish to remain in the Air Force.

Upon consideration of the affidavits filed by the parties, we make the following findings of fact:

1. In all conversations before and during trial the accused stated or indicated to his defense counsel that he did desire to go to the 3320 Correction and Rehabilitation Squadron (CRS) at Lowry Air Force Base, Colorado.

2. In a discussion after trial between the accused and his defense counsel, the accused expressed no interest in being placed in the 3320 CRS, although he did not indicate that he did not wish to go there.

In contrast to the above, the post-trial review of the staff judge advocate stated that the accused was *not* a volunteer for the 3320 CRS; [1] however, the post-trial clemency report, which was an attachment to the post-trial review, states:

A1C Black ... feels that the confinement should be coupled with rehabilitation in order that he may become a useful member of society upon the expiration of the term of confinement. A1C Black feels that once rehabilitated, he could become a productive member of the U.S. Air Force, and that if given a chance would make the Air Force a career.

The closing sentence of the report states: "A1C Black realizes he has done wrong and is willing to pay the price if, after imposition of penalty he has an opportunity to rehabilitate himself." The report did not specifically state whether the accused was a volunteer for the 3320 CRS or not.[2] Upon being served with the post-trial review, the trial defense counsel declined to correct or challenge any matters in the review as erroneous, inadequate or misleading.

Appellate government counsel argue that trial defense counsel did not respond to the review because the accused changed his mind as to his desires for retraining subsequent to trial. That is far from clear, either from the record or the affidavits submitted. At a minimum the review and clemency report are internally inconsistent and ambiguous. Although trial defense

---

1. Air Force Regulation 125–18, Operation of Air Force Correction and Detention Facilities, para. 5–8 (1 February 1980), requires that a prisoner be a volunteer for the rehabilitation program in order to be eligible therefor. This requirement is mandatory. Thus, if a prisoner is not a volunteer, the convening authority is precluded from entering him or her in the program.

2. Air Force Manual 111–1, Military Justice Guide, para. 7–5h (2 July 1973) (Chg 4, 13 May 1980), requires that the clemency interviewer inquire whether the accused is a volunteer for rehabilitation at the 3320th CRS if the accused is otherwise eligible. In view of the sentence amelioration powers of convening authorities we suggest that the accused's volunteer status be ascertained in all cases.

counsel may have been of the impression that the accused did not desire retraining when he last talked to him, surely the clemency report would have put counsel on notice that his client may have again changed his mind. Given the statement in the review that the accused was not a volunteer for the 3320 CRS, we hold that the trial defense counsel was under an obligation to clarify the desires of the accused in his response pursuant to *United States v. Goode,* 23 U.S.C.M.A. 367, 50 C.M.R. 1 (1975).

█ Trial defense counsel's representation of an accused continues after trial. *United States v. Palenius,* 2 M.J. 86 (C.M.A. 1977). One of the responsibilities of the trial defense counsel is to respond to the staff judge advocate post-trial review to correct anything that is incomplete, erroneous, or misleading in the review. This the trial defense counsel failed to do. Under the facts of this case, we find trial defense counsel's action after trial fell short of that required by *Palenius. See United States v. Zapata,* 12 M.J. 689 (N.M.C.M.R.1982).

In view of the denial to the accused of adequate post-trial representation, we will set aside the action of the convening authority and return the record to afford the accused the opportunity to fully present, with the assistance of counsel, his desires with regard to rehabilitation before action on the record by reviewing authorities. Like the Court of Military Appeals in *United States v. Siders,* 15 M.J. 272 (C.M.A. 1983), we are not so divorced from reality to believe that, in view of the offenses involved and the sentence received by the accused, the convening authority will necessarily grant the accused the opportunity for rehabilitation. However, we believe the accused has a right to make his desires in this regard known to reviewing authorities prior to their taking action on his case. Accordingly, the action of the convening authority is set aside. The record is returned for a new action after affording the accused and his counsel the opportunity to present appropriate matters.

KASTL, Senior Judge, concurs.

SNYDER, Judge (concurring/dissenting):

I concur with the conclusion that the accused did not receive ineffective representation during the trial. However, I must disassociate myself from the holding that the accused received inadequate representation during the post-trial proceedings. Therefore, I dissent.

My fellow judges have decided that trial defense counsel was inadequate as a result of his failure to adequately respond to the review of the staff judge advocate (hereinafter, the review). The perceived inadequacy was the failure to detect the "inaccurate" statement that the accused was not a volunteer for the 3320th Correction and Rehabilitation Squadron (CRS).

My disagreement is grounded on two bases. First, the findings of fact by the majority do not establish inadequate representation, thus, my placing "inaccurate" in quotation marks. Secondly, the majority's holding, in effect, establishes a mechanical inadequate counsel rule which operates without regard for the presence or absence of prejudice, which is contrary to prior precedents.

I

Discussion of the first basis will be brief. The accused's comments in the report of the clemency interview are not so clear and unequivocal that one would conclude he was volunteering for the CRS. Thus, I do not view his counsel as remiss in failing to ensure that he understood the accused's desires. His idea of rehabilitation may have been an immediate return to duty with a suspended discharge.

The second basis requires more discussion. Although fairly implied in the majority opinion, the general rule is not stated outright that the failure of trial defense counsel to correct the error in his *Goode* response normally constitutes a waiver of the defect. *United States v. Goode,* 23 U.S. C.M.A. 367, 50 C.M.R. 1 (1975). Otherwise, there would be no need to determine the competency of counsel. This Court, and

perhaps the Court of Military Appeals, has seen this dilemma grow since 1977, but has never faced it squarely. I will briefly trace its development.

After promulgation of the *Goode* rule of waiver, there immediately arose the issue of what was waived by a failure to comment and what was not waived. The initial interpretation was provided by *United States v. Austin,* 2 M.J. 391 (A.C.M.R.1975). *Austin* concluded that the *Goode* rule of waiver applied only to adverse matters raised for the first time in the review. We concurred with this view in *United States v. Robinson,* 1 M.J. 722 (A.F.C.M.R.1975).

However, the dissenter in *Robinson* would appear to be closer to the mark as well as somewhat of a seer. Placing the waiver rule in perspective, he commented as follows:

> [I]t would be enigmatic on the one hand to compel defense counsel, upon penalty of waiver, to assert his objections at trial to matters for which an accused is entitled to protection under the Constitution and military law and, on the other, to allow defense counsel, without fear of waiver, to discover error in the post-trial review and remain silent in the hope of favorable appellate action . . . usually . . . returning the record for a new review and action . . . the result that *Goode* was intended to eliminate.

*United States v. Robinson, supra* at 727 (Early, Judge, dissenting). Judge Early believed the *Goode* waiver rule to apply to all errors generated by the reviewer in the review. Obviously, errors objected to at trial would not be waived under *Goode.* He also opined that the *Goode* waiver rule should not be applied in a manner which results in a miscarriage of justice.

Nevertheless, applying *Robinson,* we held that mislabelling the accused's plea as "guilty" on the front page of the review was not waived under *Goode, United States v. Miller,* 1 M.J. 798, 799 (A.F.C.M.R.1976); and, the application of an incorrect standard by which to weigh the evidence was not waived by a failure to comment. *United States v. Thompkins,* 2 M.J. 1249 (A.F.C.

M.R.1976). *Thompkins* was certified by The Judge Advocate General, Article 67(b)(2), U.C.M.J., 10 U.S.C. § 867(b)(2), but the Court ruled that the staff judge advocate had used the correct standard. Consequently, the question of waiver was not reached. *United States v. Thompkins,* 5 M.J. 982 (C.M.A.1976).

The Court of Military Appeals provided guidance in *United States v. Barnes,* 3 M.J. 406 (C.M.A.1977), and also seeded the dilemma with which we now wrestle. *Barnes* held that the failure of trial defense counsel to comment on the failure of the review to provide the elements of the offense and apply the evidence thereto waived appellate consideration of the defect. Then comes the harbinger:

> While *Goode* recognized by use of the phrase "normally be deemed a waiver," that a case could arise which involves inadequate representation by counsel where waiver would not be applied, such circumstances are not involved in the present case.

*United States v. Barnes, supra* at 407.

In a companion case to *Barnes,* the Court held that failure of trial defense counsel to comment on a summarization of testimony which was subject to both a proper and improper interpretation waived that defect. Counsel's failure to comment was deemed to reflect a view that the summarization was proper. *United States v. Morrison,* 3 M.J. 408 (C.M.A.1977). *Morrison* gave indication that erroneous comments in the review relating to an accused's reliance on Article 31, U.C.M.J., or whether Article 31 was violated, would not be waived by a failure to comment. *United States v. Morrison, supra* at n. 1 (Fletcher, Chief Judge, concurring).

Applying *Barnes* and *Morrison,* this Court held a failure to comment on reviews' failures to discuss the affirmative defense of alibi and to fully apprise the convening authority of his discretionary powers on sentence constituted waivers of those defects. *United States v. Coner,* 4 M.J. 915 (A.F.C.M.R.1978); *United States v. Kohler,* 4 M.J. 941 (A.F.C.M.R.1978). Interestingly,

Coner and Kohler viewed Barnes as an expansion of Goode rather than an explanation.

The fact that the convening authority is the level at which an accused stands the best opportunity for relief does not vitiate the Goode waiver rule, for Goode specifically made reference to that principle. Nevertheless, the rule of waiver was promulgated.

However, for whatever reason, we continued to display a reluctance to apply the Goode waiver rule, notwithstanding the defeating of its stated purpose—conservation of appellate resources. See United States v. Smith, 11 M.J. 655 (A.F.C.M.R.1981); United States v. Harvey, 11 M.J. 793 (A.F. C.M.R.1981). We have once again fallen in step with Goode via United States v. Dickerson, 15 M.J. 753 (A.F.C.M.R.1983), which applied Barnes and specifically overruled Smith and Harvey.

It should now be clear that I view the failure of trial defense counsel to comment on the erroneous statement of the accused's volunteer status as a waiver of the defect. In a similar situation, an equally divided court denied a motion for reconsideration because it deemed waived a failure to comment on the review's erroneous advice that a sentence in excess of 12 months precluded confinement at the CRS. United States v. Lassiter, 7 M.J. 544 (A.F.C.M.R.1978). The Robinson dissenter ironically found himself again in dissent although his principles had been applied.

Then Chief Judge Early articulated the problem as follows:

> I find this action instead of resolving the issue, merely creates a dilemma: is it proper on the one hand to hold the defense counsel to a standard of knowledge that apparently was not shared either by appellate counsel or this Court; or, was his lack of knowledge of the aforementioned regulation [Air Force Regulation 125–18] of such a character that the issue of competency of counsel is raised?

United States v. Lassiter, supra at 545 (Early, Chief Judge, dissenting). Unfortunately, he did not answer the question; instead, he opted for a new review and action.

## II

Although United States v. Barnes, 3 M.J. 406 (C.M.A.1977), did not cite United States v. Palenius, 2 M.J. 86 (C.M.A.1977), it cannot be said that the quote from Barnes, above, refers to ineffective counsel only during the trial. The main problem, however, is that if every waiver under Goode constitutes ineffective assistance of counsel, the Goode rule of waiver will be effectively eliminated. I seriously doubt that such a situation constitutes the correct law.

Can it be realistically argued that misstating the accused's volunteer status is somehow more prejudicial than failing to object to certain evidence at trial, or failing to comment on erroneous statements of the evidence or omitting the elements of the offense? I think not. The former may have impacted the finding of guilt itself. See United States v. Dupree, 1 U.S.C.M.A. 665, 5 C.M.R. 93 (1952). The latter may very well have served to shape the convening authority's perception of the accused and, as a result, affected the withholding of clemency. See United States v. Kohler, supra.

Concededly, strict application of the waiver doctrine probably means closer scrutiny of defense counsel's performance. See United States v. Mason, 14 M.J. 92, 95 at n. 5 (C.M.A.1982). But not every error or omission renders counsel inadequate. United States v. Cohen, 2 M.J. 350 (A.F.C.M.R. 1976); and where an act or omission is deemed to be error it should be tested for prejudice. The majority opinion states as much, but either assumes prejudice, or, by implication, presumes it to be inherent in the omission.

Testing for prejudice is not alien to the area of inadequate representation. There is no indication that Palenius precludes assessing a post-trial omission for prejudice. The Court used rather sweeping language in

*Schreck I* to the effect that constitutional errors would not require an assessment for prejudice. *United States v. Schreck,* 10 M.J. 226 (C.M.A.1981). However, in *Schreck II,* it tested for prejudice prior to remanding the record for further action. *United States v. Schreck,* 10 M.J. 374 (C.M. A.1981). Although recognizing that the accused is the ultimate loser when defense counsel and the staff judge advocate fail to communicate, the Court in *United States v. McAdoo,* 14 M.J. 60 (C.M.A.1982), still granted a Court of Military Review the option of reviewing the review and the comments of defense counsel and testing for prejudice or remanding for a new review and action.

Therefore, I conclude that counsel in the case *sub judice* was not inadequate. He did not abandon his client by inadvertently concurring with the adverse recommendation of the staff judge advocate, *United States v. Schreck, supra;* or by disclosing disagreement with his client before the action authority. *United States v. Radford,* 14 M.J. 322 (C.M.A.1982). Even though silence is, at best, a dubious indicator, the Court in *Schreck I* gave no indication that submitting no comments at all would have constituted incompetency. *United States v. Schreck, supra* at 228.

Assuming *arguendo* that this counsel did commit error, the accused has suffered no prejudice. Initially, an accused volunteering for the CRS is, realistically, not a threshold action. It is simply not that determining a factor as to whether a person is confined at the CRS. In fact, rather than a qualifying factor for an accused, the regulatory provision limiting CRS confinees to volunteers may properly be viewed as a restraint on convening authorities—specifically, to deter convening authorities from wasting limited space by attempting to rehabilitate those who have no desire to be rehabilitated.

Secondly, this accused was sentenced to a dishonorable discharge and five years confinement at hard labor. To even qualify for the CRS his sentence required substantial reduction. At any rate, the evidence establishes that he was not a viable candidate for the CRS. Considering the offenses of which he was convicted, there was, and is, little likelihood that the convening authority will designate the CRS as the place of confinement. At first blush, one may view *United States v. Siders,* 15 M.J. 272 (C.M.A.1983), as requiring a different result; especially note 3 therein. To the contrary, *Siders* is readily distinguishable.

The trial defense counsel in *Siders* submitted a *Goode* reply as well as a personal plea for clemency from the accused, which was lost. The Court held that the accused was entitled to have his plea for clemency considered in *haec verba* rather than via a cold summary by the staff judge advocate. For purposes of this case, the key point to be drawn from *Siders* is that it was decided under the accused's right to have petitions for clemency fully considered by the convening authority. There is a long line of precedents upholding this principle, regardless of the likelihood of the petition's success. *See e.g., United States v. Arnold,* 21 U.S.C.M.A. 151, 44 C.M.R. 205 (1972); *United States v. Oliver,* 42 C.M.R. 906 (A.C.M.R. 1970). I believe *United States v. Zapata,* 12 M.J. 689 (N.M.C.M.R.1981), to have relied on the same principle. That is the vein in which I believe *Siders* should be applied.

Informing the convening authority that one is a volunteer for the CRS is not on the same level as apprising him of a petition for clemency. Additionally, assessing the likelihood of favorable action is integral to testing for prejudice. *United States v. Schreck, supra* (Cook, Judge, dissenting).

My final basis for concluding that the accused was not prejudiced is that after erroneously stating the accused was not a volunteer for the CRS, the review proceeded to evaluate the sentence and the surrounding circumstances as though he was, in fact, a volunteer. After reading the review's section on clemency in its entirety, I am convinced beyond a reasonable doubt

that the convening authority's opinion was not altered to the accused's detriment by the supposed misstatement.

To return this record for a new review and action merely for the staff judge advocate and convening authority to ritualistically reach the same result as initially, is to expend the judicial resources *Goode* was intended to conserve. To avoid such technical errors in the future, staff judge advocates would perhaps be wise to evaluate each accused's potential for clemency as if he or she is a volunteer for the CRS—regardless of the true state of affairs.

Accordingly, I would affirm the findings of guilty and the sentence.